# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JAMES FREESE, II,

          Petitioner,               Case No. 21-12800
                                     Hon. Jonathan J.C. Grey

v.

MIKE BROWN,

          Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

On December 2, 2021, James Freese, II, a Michigan prisoner proceeding through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Freese pleaded no contest to eleven sexual misconduct charges. He now seeks habeas relief because he was not advised prior to entering his plea that, under Michigan law, a second-degree criminal sexual conduct conviction subjected him to mandatory lifetime electronic monitoring ("LEM").

For the reasons set forth below, the Court **DENIES** the petition and declines to issue a certificate of appealability.

## I.    BACKGROUND

Freese was charged in Alpena County Circuit Court with twelve counts of criminal sexual misconduct ranging in degree from first to fourth. The charges arose from his sexual assault of various women and girls between 1991 and 2012. *See People v. Freese*, No. 329673, 2017 WL 1488986, at *1 (Mich. Ct. App. Apr. 25, 2017). Freese elected to have his case tried by a jury. *Id.*

On the third day of trial, Freese pleaded no contest to 11 counts of criminal sexual conduct – five counts of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws. § 750.520b(1)(b)(ii), two counts of second-degree criminal sexual conduct (CSC-II), Mich. Comp. Laws § 750.520c(1)(a), three counts of third-degree criminal sexual conduct (CSC-III), Mich. Comp. Laws § 750.520d(1)(a), (b), and one count of fourth-degree criminal sexual conduct (CSC-IV), Mich. Comp. Laws § 750.520e(1). In exchange for the plea, the prosecutor dismissed a first-degree charge which would have exposed Freese to a mandatory minimum sentence of not less than 25 years. *Id.*

Prior to sentencing, Freese filed a motion to withdraw his plea on the ground that his trial counsel coerced him into entering a plea. The

trial court held an evidentiary hearing and denied the motion. (*See* ECF No. 6-15.) The trial court sentenced Freese to concurrent sentences of imprisonment of 15 to 40 years for each CSC-I conviction, 3 to 15 years for each CSC-II conviction, 4 to 15 years for each CSC-III conviction, and 13 months to 2 years for the CSC-IV conviction, along with lifetime electronic monitoring for each of the first and second-degree convictions under Mich. Comp. Laws § 750.520n(1). *See Freese*, 2017 WL 1488986 at *1.

Freese filed an appeal by right and by leave in the Michigan Court of Appeals.[1] He raised these claims: (1) the trial court abused its discretion by denying Freese's motion to withdraw his plea because it was involuntary as it was induced by fear; (2) Freese's plea was involuntary because the trial judge failed to advise him of the mandatory lifetime electronic monitoring for the second-degree CSC crimes; (3) the court erred by imposing lifetime electronic monitoring in the judgment of sentence when it was not imposed a part of the sentencing hearing; (4)

---

[1] Several of the assaults occurred before December 24, 1994, the date the Michigan Constitution was amended to eliminate an appeal of right following plea-based convictions, allowing appeals only by leave granted. Freese's appeal was by right as to the convictions relating to assaults occurring before that date and by leave for those occurring after. *Freese*, 2017 WL 1488986 at *1, n.1.

trial and appellate counsel rendered ineffective assistance by failing to request plea withdrawal and pressuring Freese into entering a plea; and (5) the sentence was disproportionate and unreasonable. The Michigan Court of Appeals affirmed Freese's convictions. *Freese*, 2017 WL 1488986. The Michigan Supreme Court denied Freese's application for leave to appeal. *People v. Freese*, 501 Mich. 952 (2018).

Next, Freese filed a motion for relief from judgment in the trial court. He claimed: (1) he should be permitted to withdraw his second-degree CSC pleas because he was not advised that LEM was a consequence of those pleas, and (2) under the Ex Post Facto Clause he should not be sentenced to LEM for his first-degree CSC convictions. The trial court denied the motion. (*See* ECF No. 6-17.) The Michigan Court of Appeals granted Freese's application for leave to appeal the trial court's decision. *See People v. Freese, II,* No. 332141 (Mich. Ct. App. May 5, 2016) (ECF No. 6-19, PageID.1229.)

The Michigan Court of Appeals held that imposition of LEM based on Freese's first-degree CSC convictions violated the Ex Post Facto Clause because, at the time of the charged offenses, the maximum penalty for first-degree CSC was imprisonment for "life or any term of

4

years." *People v. Freese*, No. 350388, 2021 WL 219557, *2 (Mich. Jan. 21, 2021). The court of appeals remanded to the trial court to correct the judgment of sentence by removing the mandatory LEM from the first-degree CSC sentences. *Id.* at *2, 5. The court of appeals affirmed the trial court's order denying the motion for relief from judgment in all other respects. *Id.* at *5. The Michigan Supreme Court denied Freese leave to appeal the court of appeals' decision. *People v. Freese*, No. 162738, 508 Mich. 925 (Mich. 2021).

Freese then filed the instant petition for a writ of habeas corpus. He presents a single ground for relief:

> Under the Due Process Clause of the United States Constitution, because Freese was not informed of the lifetime electronic consequences of his CSC-II pleas, he is entitled to withdraw those pleas.

Respondent filed an answer in opposition arguing that the Court should decline to address the claim under the concurrent sentencing doctrine, and that Freese's claim is procedurally defaulted and meritless. (ECF No. 5.) Freese filed a reply brief. (ECF No. 7.)

## II.   STANDARD

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act

(AEDPA) 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124–25 (2018) (quoting 28 U.S.C. § 2254(d)).

The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664

(2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  DISCUSSION

Freese pleaded no contest to eleven criminal sexual conduct charges, including five counts of first-degree CSC and two counts of second-degree CSC. Prior to accepting Freese's plea, the trial court advised him that he faced mandatory LEM for each of the first-degree CSC charges but failed to advise him that he also faced mandatory LEM for the second-degree CSC charges. Freese claims that this failure rendered his plea to the second-degree CSC charges unknowing and involuntary.

### A.    Concurrent Sentence Doctrine

Respondent argues that the Court should decline review of this claim because even if the Court granted the requested relief and allowed Freese the chance to withdraw his pleas to second-degree CSC, he would still be incarcerated on his first-degree CSC convictions. (*See* ECF No. 5, PageID.75-77.)

Under the concurrent sentence doctrine, a federal court may decline to review a challenge to a conviction "when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). The Sixth Circuit "has been admittedly hesitant to apply this doctrine, invoking it only when there is no possibility of 'adverse consequences' if the convictions stand." *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010).

Adverse consequences in this context include: "an effect on parole or a potential pardon, the existence of state recidivist statutes, the possibility of impeachment at a future trial, the potential for use as evidence of a prior bad act, and possible stigma." *Id.* Respondent fails to demonstrate a lack of adverse consequences attaching to Freese's second-degree CSC convictions. The Court therefore declines to apply the concurrent sentence doctrine.

## B.    Procedural Default

Respondent argues that the sole claim raised in the petition is procedurally defaulted. A habeas claim is procedurally defaulted if the petitioner's failure to comply with a state procedural rule was an

"adequate and independent" ground for the state court's denial of relief on that claim. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010). Freese correctly concedes procedural default because the Michigan Court of Appeals held that he did not comply with Michigan Court Rule 6.310(D), which requires a defendant to raise a specific claim for plea withdrawal in the trial court before raising it on appeal. *Freese*, 2017 WL 1488986 at \*2. The Court, therefore, may consider the merits of Freese's claim only if he can establish either (1) cause for the default and prejudice from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Freese asserts that his appellate attorney was ineffective by failing to preserve the claim for review by filing a second motion for plea withdrawal in the trial court and this constitutes cause to excuse the default and that he suffered actual prejudice as a result. When an ineffective assistance of counsel claim is asserted as cause to excuse a procedural default, the ineffective assistance claim is reviewed *de novo*:

> "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). In particular,

"[t]he latter must meet the higher AEDPA standard of review, while the former need not." *Id*. at 237; *see also, e.g.*, *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019); *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). Thus, we review de novo the question of whether ineffective assistance of appellate counsel excuses [the petitioner's] procedural default.

*Chase v. MaCauley*, 971 F.3d 582, 591–92 (6th Cir. 2020).

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id*. at 694.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *See Evitts v. Lucey*, 469 U.S. 387, 396–397 (1985). Appellate "'[c]ounsel's performance is strongly presumed to be effective.'" *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)).

A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "To evaluate a claim of ineffective assistance of appellate counsel . . . the court must assess the strength of the claim that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011). "If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel." *Id.*

Here, Freese fails to show that appellate counsel performed deficiently or that he suffered prejudice. Freese maintains that it was "objectively unreasonable" for appellate counsel not to seek plea withdrawal in the trial court on the ground he was not notified about mandatory LEM for second-degree CSC. (ECF No. 1-1, PageID.18.) While appellate counsel did not file a second motion in the trial court, she did

11

file a motion to remand in the Michigan Court of Appeals on the ground that counsel misadvised Freese about the applicability of lifetime electronic monitoring. (*See* ECF No. 6-19, PageID.1174-1176.) Counsel's decision not to seek remand or move for plea withdrawal on the precise issue raised by Freese was not unreasonable.

Counsel's appellate brief shows that she carefully considered and presented Petitioner's lifetime electronic monitoring claim. (*See id.* at PageID.1200-1202.) Counsel acknowledged that this precise claim was not raised when Freese moved to withdraw his plea before sentencing but argued that the court of appeals could excuse that error because Freese's first and second trial attorneys were ineffective. Counsel further argued that state court precedent clearly showed a willingness to excuse the lack of issue preservation for a plainly defective guilty (or no contest) plea. Finally, she maintained that, because the error was plain, the court of appeals could grant peremptory reversal under Mich. Ct. Rule 7.205(D)(2).

The reasonableness of an attorney's decisions is not measured by their success. *See Baze v. Parker*, 371 F.3d 310, 320–21 (6th Cir. 2004) ("[T]he Sixth Amendment guarantees [only] reasonable competence, not

perfect litigation."). Here, counsel's presentation of the issues was clearly the result of strategic and tactical choices, choices which are "properly left to the sound professional judgment of counsel." *McMeans v. Brigano*, 228 F.3d 674, 688 (6th Cir. 2000) (citing *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990)). Freese has failed to show that appellate counsel's tactical decisions fell outside the wide range of professionally competent assistance.

Even if counsel erred, Freese has not shown prejudice. To show prejudice, Freese must show that, but for his counsel's error, there was a reasonable probability he would have prevailed on appeal. *Smith*, 528 U.S. at 285–86. Freese argues that it is "clear cut" that if appellate counsel had filed a second motion for plea withdrawal on the ground that the trial court did not advise him about the lifetime electronic monitoring consequences of his second-degree CSC pleas, "the trial court would have been obligated to grant the motion." (ECF No. 1-1, PageID.18.) In fact, this is far from clear cut.

The Michigan Court of Appeals held that the error was harmless because the trial court was in "substantial compliance" with Michigan Court Rule 6.302(B)(2) which requires a defendant to be advised of

13

mandatory lifetime electronic monitoring. *Freese*, 2017 WL 1488986 at
*4. As the court of appeals noted, Petitioner was advised of the lifetime
electronic monitoring requirement with respect to each of the five first-
degree CSC charges. Given the state court's holding that the trial court's
colloquy was sufficient, if not perfect, Freese fails to show a reasonable
probability that, absent counsel's claimed deficiency, the result of the
proceeding would have been different.

This claim, therefore, is procedurally defaulted unless Freese can
show that a fundamental miscarriage of justice would occur if his claim
were not reviewed. "The miscarriage-of-justice exception requires a
prisoner to present new reliable evidence showing that he is actually
innocent." *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017). A
prisoner asserting actual innocence to excuse a procedural default "must
establish that, in light of new evidence, 'it is more likely than not that no
reasonable juror would have found petitioner guilty beyond a reasonable
doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup v.
Delo*, 513 U.S. 298, 327 (1995)). This standard is "demanding and permits
review only in the 'extraordinary' case." *Id.* at 538 (quoting *Schlup*, 513
U.S. at 327).

14

Freese does not attempt to satisfy this standard nor is there any evidence in the record that would support a miscarriage-of-justice exception. Consequently, the Court finds that this claim is procedurally defaulted.

## C.    Review of the Merits

Even if the procedural default were excused, Freese is not entitled to relief. When a criminal defendant is convicted pursuant to a plea, habeas review is limited to whether the plea was made knowingly, intelligently, and voluntarily. *See United States v. Broce*, 488 U.S. 563, 570 (1989); *Haring v. Prosise,* 462 U.S. 306, 219–20 (1983).

Pleas must be made "with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Brady*, 397 U.S. 742, 748 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. A plea "entered by one fully aware of the direct consequences" is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757 (quotation omitted).

15

Michigan courts consider mandatory LEM to be "a direct consequence of a plea." *People v. Cole*, 491 Mich. 325, 337 (Mich. 2012). The Michigan Supreme Court, therefore, has held that "when the governing criminal statute mandates that a trial court sentence a defendant to lifetime electronic monitoring, due process requires the trial court to inform the defendant entering the plea that he or she will be subject to mandatory lifetime electronic monitoring." *Id.* But a state trial court's failure to comply with the rule set forth in *Cole* is not a basis for habeas relief because the writ may not issue "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); s*ee also Smith v. Bauman,* No. 10-11052, 2018 WL 1399312, at *4 (E.D. Mich. Mar. 19, 2018) (citations omitted), aff'd on other grounds, No. 18-1385, 2019 WL 4865345 (6th Cir. June 25, 2019) (holding that state court's failure to comply with *Cole'*s LEM-notice requirement is not a basis for habeas relief).

The Supreme Court has never held that mandatory lifetime electronic monitoring is a direct consequence of a defendant's plea about which the defendant must be informed. Furthermore, the Sixth Circuit Court of Appeals has held that LEM is not a direct consequence of a plea.

*Saylor v. Nagy*, No. 20-1834, 2021 WL 5356030, at *4 (6th Cir. Nov. 17, 2021). In *Saylor*, the Sixth Circuit considered a habeas petitioner's claim that his plea was rendered unknowing by defense counsel's failure to advise him about LEM and sex-offender registration.

The Sixth Circuit recognized that "a defendant must be made 'fully aware of the *direct* consequences' of his guilty plea." *Id.* at 509 (emphasis added by *Saylor*) (quoting *Mabry v. Johnson*, 467 U.S. 504, 509 (1984)). The Sixth Circuit also recognized:

> [The Supreme Court] says nothing about whether LEM and sex-offender registration are direct or collateral consequences. That distinction matters because "[t]he defendant need only be aware of the *direct* consequences of the plea," not collateral ones. *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (emphasis added); see also *Parrino v. United States*, 655 F. App'x 399, 403 (6th Cir. 2016) ("Typically, a defendant's failure to consider . . . collateral consequences of a criminal conviction . . . does not vitiate a guilty plea.").[ ] A consequence is collateral rather than direct if it "remains beyond the control and responsibility of the district court in which that conviction was entered." *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002) (quoting *United States v. Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000)).

> If anything, the available caselaw cuts in the opposite direction of Saylor's argument. It puts sex-offender registration firmly in the collateral column. *See, e.g., Chaidez v. United States*, 568 U.S. 342, 349 n.5 (2013) ("[E]ffects of a conviction commonly viewed as collateral include civil commitment, civil forfeiture, sex offender registration, disqualification from public benefits, and

disenfranchisement."); *Leslie v. Randle*, 296 F.3d 518, 523 (6th Cir. 2002) ("[T]he classification, registration, and community notification provisions [of an Ohio sexual-predator statute] are more analogous to collateral consequences...."). This makes sense, since "whether [the defendant] must actually register is controlled by state and federal law and is beyond the control or responsibility of the court." *United States v. Cottle*, 355 F. App'x 18, 20 (6th Cir. 2009). That same logic applies just as well to LEM.[2] With no guidance from the Supreme Court to say otherwise, Saylor's ineffective-assistance-of-plea-counsel claim fails on arrival. And so we need not reach prejudice.

---

[2] We have yet to consider this specific question. But a pair of unpublished district court cases are instructive. *See Smith v. Bauman*, No. 5:10-CV-11052, 2018 WL 1399312, at *5 (E.D. Mich. Mar. 19, 2018) ("[LEM] ... will be beyond the control or responsibility of the trial court and, therefore, it is a collateral consequence...."); *Noonan v. Hoffner*, No. 1:14-CV-830, 2014 WL 5542745, at *10 (W.D. Mich. Oct. 31, 2014) ("[B]ecause the electronic monitoring requirement is governed by state law, it is beyond the control or responsibility of the court.").

*Saylor*, 2021 WL 53556030 at *4.[2]

Because there is no clearly established federal law holding that LEM is a direct consequence of a plea, Freese cannot establish that the trial court's failure to advise him of this consequence rendered his plea involuntary.

---

[2] More recently the Sixth Circuit considered LEM in the context of § 2254's "in custody" requirement and held that Michigan's LEM requirements are "collateral consequences of conviction." *Corridore v. Washington*, 71 F.4th 491, 498 (6th Cir. 2023).

Moreover, even assuming that LEM *is* a direct consequence of a second-degree CSC conviction, Petitioner is not entitled to relief. If LEM is a direct consequence, then the trial court failed in its duty to advise Freese regarding that penalty. *Hall v. Gainsheimer*, 137 F. App'x 866, 869 (6th Cir. 2005). But the failure to advise a defendant about a direct consequence of a plea is subject to harmless error analysis. *See id.* Under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), Freese must show that the error had a "substantial and injurious effect or influence" on the outcome. *Id.* at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A "substantial and injurious effect or influence" means "actual prejudice." *Id.* at 637–38. In the context of a plea-based conviction, a defendant must show that "but for the trial court's failure to properly advise him about [the LEM requirement], he would not have pleaded guilty." *Hall*, 137 F. App'x at 869.

Freese asserts that he would not have entered his plea had he known about the electronic-monitoring requirement for the two second-degree CSC crimes. This Court finds it implausible that, at the time of the plea, Petitioner would be willing to face the possibility of lifetime electronic monitoring for five first-degree CSC convictions but would be

19

unwilling to face the lifetime electronic monitoring for two second-degree CSC convictions. Even now, Petitioner does not definitively assert his desire to withdraw his plea. Instead, he asks for the opportunity to return to the trial court to decide whether he wishes to withdraw his plea. Freese fails to show that he would not have pleaded guilty if the trial court advised him about the LEM consequence of his second-degree CSC plea. Any error was harmless, and relief is denied.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief

20

should be granted. Therefore, the Court will deny a certificate of appealability.

## V.   CONCLUSION

For the reasons set forth, the Court **DENIES** the petition for writ of habeas corpus and **DENIES** a certificate of appealability.

**SO ORDERED.**

<u>s/Jonathan J.C. Grey</u>
Hon. Jonathan J.C. Grey
Date: March 19, 2025                 United States District Judge

<u>**Certificate of Service**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2025.

<u>**s/ S. Osorio**</u>
Sandra Osorio
Case Manager